IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| LMCHH PCP, LLC | Case No. 17-10353 |
| Debtors | (Jointly Administered) |
| | SECTION B |

| | |
|---|---|
| LMCHH PCP, LLC *et al,* PLAN ADMINISTRATOR | Adversary No. 19-01024 |
| Plaintiff | |
| vs. | |
| CRESCENT IMAGING, LLC | |
| Defendant | |

## MEMORANDUM OPINION

This case came on for trial on February 12, 2020 on the complaint of the Plan Administrator for LMCHH PCP, LLC and Louisiana Medical Center and Heart Hospital LLC ("Hospital") to recover payments made to Crescent Imaging, LLC ("Crescent") during the 90 day period before the Hospital filed a petition for relief under Chapter 11 of the U.S. Bankruptcy Code.[1] The Hospital sought recovery of $24,320.00 under § 547 of the Bankruptcy Code. Because the Hospital has shown it has satisfied all the elements of § 547(b) and Crescent has not proved its defense with respect to one of the payments, judgment is entered in favor of the Hospital for $3,750 plus interest at the federal judicial rate from the date of judgment.

---

[1] 11 U.S.C. § 101 *et seq.*

1

## I. FACTUAL BACKGROUND

On January 21, 2007, Crescent and the Hospital entered into an agreement under which Crescent provided the Hospital with radiology and other imaging services. Crescent also served as a physician advisor for informatics to the Hospital beginning May 9, 2014. Crescent provided both services until the Hospital closed. During the 90 days prior to the petition date, from November 1, 2016 to January 30, 2017, the Hospital made several transfers to Crescent as payment for Crescent's service. At issue here are four payments totaling $24,320.00. [2]

## II. LAW AND ANALYSIS

The Hospital brings its complaint under § 547(b) of the Bankruptcy Code, which provides:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made--
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if--
> (A) the case were a case under chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Crescent argues in its post-trial brief that the Hospital has failed to meet its burden under § 547(b) of the Bankruptcy Code. Other than this general statement, however, Crescent does not provide any specific instances or examples of which part of § 547(b) the Hospital has failed to prove.

---

[2] The Hospital's complaint sought $41,545.00, but by the time of trial, the Hospital had reduced that amount to $24,320.00. It determined that some of the payments it had originally filed suit on were not preferences.

There was a transfer of an interest of the debtor in property, in this case the funds used to make the payments. The transfers were to Crescent, a creditor. The transfers were made in payment for services rendered by Crescent; thus, they were on account of an antecedent debt owed by the debtor before the payment was made. The transfers were made within 90 days of the filing of the petition on January 30, 2017. The transfers enabled Crescent, a general unsecured creditor, to receive more than it would have if the case were a case under Chapter 7 of the Bankruptcy Code, the transfer had not been made, and it had received payment on the debt to the extent provided by the Bankruptcy Code. The court finds that the Hospital has proved the elements of § 547(b) by a preponderance of the evidence.

Crescent has raised an affirmative defense that the payments were made in the ordinary course of business pursuant to § 547(c)(2). Section 547(c)(2) states that the trustee may not avoid under this section a transfer:

> [T]o the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course or business or financial affairs of the debtor and the transferee, and such transfer was—
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms.

Crescent is only claiming the defense under § 547(c)(2)(A), it made no argument and put on no evidence to show that the transfers were made accordingly to ordinary business terms in the industry. Subsection A requires the court to look to the course of dealings between the parties to determine whether the transaction was made in the ordinary course of their dealings with each other. The factors that courts consider include (1) the time period over which the parties engaged in similar transactions, (2) whether the amount or form of payment differ from past practices, (3) the presence of any unusual collection activity, and (4) whether the creditor took

actions that gained it an advantage over other creditors in light of the debtor's deteriorating financial condition. *See In re Louisiana Pellets, Inc.*, 605 B.R. 726, 731 (Bankr. W.D. La. 2019), *citing Kleven v. Household Bank F.S.B.*, 334 F.3d 638, 642 (7th Cir. 2003); *In re Quad Systems Corp.*, 2003 WL 25947345, at *5 (Bankr. E.D. Pa. 2003). A creditor typically addresses these factors by establishing a "baseline of dealing" as far as the parties' past billing, payment, and collection practices. *Id., citing In re Accessair, Inc.*, 314 B.R. 386, 393 (8th Cir. BAP 2004) (creditor had "the burden of establishing some baseline of dealings between the parties prior to the preference period"). A creditor must establish that the challenged transfer occurring during the preference period falls within the normal pattern of payment practices between the parties during the pre-preference period. *Id.* A creditor asserting an ordinary course of business defense must prove the elements by a preponderance of the evidence. *In re SGSM Acquisition Co., LLC,* 439 F.3d 233 (2006).

      At trial, Crescent's only witness was Dr. David Silvestri, the managing member of Crescent. He testified that he had been providing services to the Hospital since 2007.[3] Exhibit 4 shows that the payments were always made by check. Dr. Silvestri also testified that he had not engaged in any unusual collection activity, either in the period leading up to the preference period or during the preference period. The Hospital did not contest this.

      At trial, the parties spent a great deal of time arguing over whether the time from invoice to payment should be calculated using the date the check was issued, or the date the check was honored. The question of whether a transfer falls within the 90-day period, particularly where a check is issued outside the 90-day period but honored within the 90-day period was decided by the United States Supreme Court in *Barnhill v. Johnson,* 503

---

[3] Trial Exhibit 1 is a contract between the parties that shows Dr. Silvestri has been providing services since 2007.

U.S. 393, 112 S. Ct. 1386, 118 L. Ed. 2d 39 (1992). The court found that for purposes of § 547(b) a transfer is deemed to occur on the date the check is honored by the drawee bank, not the date of delivery to the payee. But this rule does not extend to prescribe the method of calculating the amount of time between invoice and payment when pleading the ordinary course defense under § 547(c).[4] Here it appears that at times, Crescent held some checks for several weeks before cashing them. If Crescent were challenging whether a payment fell into the preference period because of this behavior, the answer would undoubtedly be that it did. But because the payment question in an ordinary course of business defense necessarily focuses on the behavior of the debtor, rather than the behavior of the creditor, the court does not need to use the date the check was honored, but rather it can use the date the check was issued when determining the length of time between invoice and payment by the debtor.

The bulk of the trial testimony, both by Dr. Silvestri, and by the Hospital's witness, Ms. Roberta Probber,[5] focused on the length of time between when Crescent invoiced the services, and when the Hospital made payment. The Hospital used dates ranging from August 2014 through January 2107,[6] while Crescent used dates going back to May 2013 to January 2017.[7] Although she was offered as a fact witness and not an expert, Ms. Probber conducted a statistical analysis of her finding, which resulted in a range of ordinary course payments from invoice to transfer that were between 9 and 31 days. She further testified about the four payments the Hospital seeks to recover: 1) the

---

[4] *In re Opus East, LLC,* 528, B.R. 30, 97 (Bankr.D.Del. 2015) (although the date the check was honored is the date the preference occurred for purposes of 547(b), the date the check was received is relevant date in connection with defenses under 547(c)), citing *Braniff Airways, Inc. v. Midwest Corp.,* 873 F.2d 805 (5th Cir. 1989).
[5] Ms. Probber is the Senior Director of Corporate Finance and Restructuring at FTI Consulting, which is the firm where the Plan Administrator works.
[6] Trial Exhibits 10 and 12.
[7] Trial Exhibit 11.

check honored on November 14, 2016 in the amount of $5,000 was 40 days after the October 5, 2016 invoice; 2) the check honored on January 9, 2017 in the amount of $9,750 was 39 days after the December 1, 2016 invoice; 3) the check honored on January 30, 2017 in the amount of $5,820 was 3 days after the January 27, 2017 invoice; and 4) there was insufficient information to determine how many days there were between the check honored on January 30, 2017 in the amount of $3,750 and the date of the invoice.[8]

Crescent, however, argued at trial that the court should use the date the checks were issued: 1) the $5,000 invoiced on October 5, 2016 was paid by check dated October 12, 2016, which is a difference of only 7 days; and 2) the $9,750 invoiced on December 1, 2016 was paid on December 29, 2016 which is a difference of 28 days. Crescent's trial exhibit did not contain information on the other two transfers; at most the check for $5,820 was issued 3 days after the invoice date.

Ms. Probber conducted a statistical analysis. Her finding was that using all of the payments made, the average was 22 days, and the standard deviation was 16. If she excluded the payment that was an outlier (a non-preferential payment honored 79 days after the date of the invoice) the average was 20 days with a statistical deviation of 11. She explained that using her method, the court should consider the normal range of payments to be those made within 9 (20-11) to 31 (20+11) days. If the outlier were not excluded, the range would be 6 to 38 days.

If the court makes the same calculations using Crescent's longer time period, i.e, with the payments ranging back to May 2013 instead of only going back to August 2014, the average is 17, and the standard deviation is 16. If the court excludes the outliers, then

---

[8] The Hospital did not have a copy of the invoice, and Crescent did not produce it.

the average is 14 and the standard deviation is 11. This means that using the same calculations Ms. Probber made but using an extended time period, the range is between 3 and 25 days.

Crescent argues that the methodology used by Ms. Probber should not be adopted by the court. It argues that instead of using the standard deviation method to examine the preference payments, the court should use the range method, whereby the court looks at the entire range of times it took the Hospital to pay various invoices. The hospital paid some invoices immediately, or in zero days, and the longest it took was 63 days. This method would give the range of 0 to 63 days within which the payments were tendered by the Hospital in the pre-preference period. This court has used this method in other cases. *See Lefoldt v. Tetra Applied Technologies, LLC,* 2018 WL 5786035 (Bankr.E.D.La.) If the court uses this method, then all the payments would fall within the ordinary course of dealing between the parties.

There are certainly many different ways to calculate all of this, and different courts have approved different methods. *See In re Powerave Techs.,* 2017 Bankr. LEXIS 1023, 2017 WL 1373252 (Bankr.D.Del. 2017) (describing the range method, the batch method, the DSO method, the inter-quartile range method, and the standard deviation method). After reviewing the payments, making a variety of its own calculations based on different methods, and balancing the other factors it must consider, the court is left with the impression that the preference payments were in the ordinary course of business as between this creditor and this debtor. The court finds, however, that Crescent did not bear its burden of proof with respect to the final payment in the amount of $3,750. The evidence presented at trial did not contain invoice information for that payment, so the

court cannot make a finding that the debtor proved its ordinary course defense with respect to that payment.

### III. CONCLUSION

For the reasons set forth in this memorandum opinion, the court finds that the Hospital proved the payments were preferential transfers. The court also finds that Crescent proved the ordinary course defense except for the payment of $3,750. The court will enter a separate judgment in accordance with this opinion.

New Orleans, Louisiana, July 6, 2020.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge